# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TYANNA MONTGOMERY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:17-cv-00618-PX |
| MEDSTAR MONTGOMERY MEDICAL CENTER, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Pending in this employment discrimination case is Plaintiff Tyanna Montgomery ("Montgomery")'s Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment. ECF Nos. 40, 43. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court denies Plaintiff's motion.

### I. Background

Montgomery, an African American woman, worked at Medstar Montgomery Medical Center ("Medstar") as a Security Officer from August 2010 until her termination on April 17, 2017. ECF No. 29-1 at 9; ECF No. 29-2 at 106. Medstar contends that her termination was due to job performance issues (ECF No. 29-1 at 8), while Montgomery maintains that Medstar discriminated against her and terminated her in retaliation. ECF No. 35 at 1.[1]

Security Officers at Medstar were expected to "effectively resolve confrontation situations," maintain order on the Medstar premises, and assist Medstar visitors and patients. ECF No. 29-2 at 12, 71. According to written disciplinary actions, Montgomery failed to meet those expectations. Specifically, Montgomery had a "negative demeanor" and regularly arrived

---

[1] The Court previously set out all facts relevant to the underlying summary judgment motion (ECF No. 37), which are incorporated here but will not be repeated unless relevant to the current reconsideration motion.

at work late. ECF No. 29-2 at 85. Montgomery concedes that she often was tardy, but argues that she had "no unexcused absence or tardiness within approximately nine months prior to her termination." ECF No. 43 at 9. In support, Montgomery cites to her 2017 mid-year review, which states that she had "improved in her tardiness." ECF No. 35-2 at 37. Furthermore, Montgomery argues that when Medstar disciplined her for her demeanor, the discipline itself was motivated by race and gender. ECF No. 22 ¶¶ 241, 271, 301.[2]

Between June 2016 and April 2017, Medstar disciplined Montgomery for failing to greet people at the front desk (ECF No. 29-2 at 85); calling a co-worker a "Bitch" (*id.*); not pursuing an escaping patient when a senior officer also did not pursue the patient (ECF No. 29-2 at 99); and being "cold" to a visitor looking for lost keys. ECF No. 29-2 at 106. Montgomery asserts that this last incident, which was the precipitating event for her termination, never occurred. ECF No. 43 at 7. Montgomery contrasts these disciplinary actions with previous annual evaluations that rated her as a "key contributor," Medstar's designation for average performances. ECF No. 35-2 at 2–33.[3]

Montgomery also contends that Medstar acted in a discriminatory manner by failing to discipline appropriately a volunteer employee that had "assaulted" Montgomery (ECF No. 29-2 at 18); reassigning Montgomery from the front lobby to another location for a month (*id.* at 80); demoting Montgomery from the Lead position and not compensating her when she did work as a Lead (ECF No. 22 ¶¶ 69, 103);[4] telling Montgomery to "get more heart" (ECF No. 29-2 at 82); yelling at Montgomery when the supervisor said he was tired of her "damn" shift that thought it

---

[2] Although Montgomery originally pursued race and gender discrimination claims, Montgomery, through former counsel, abandoned the race discrimination claim. ECF No. 35 ¶ 5.

[3] Medstar assigns employees one of three ratings, in order from highest to lowest: (1) Role Model; (2) Key Contributor; and (3) Below Expectations. ECF No. 29-1 ¶ 26.

[4] Medstar retorts that Montgomery served as Lead on five subsequent occasions and has been compensated for every time that she acted as Lead. ECF No. 29-1 ¶ 55(c)–(d).

2

could "do whatever the fuck" it wants (*id.*); posting an unenforced, new uniform policy that would only affect Montgomery (ECF No. 22 ¶ 142); and implying that Montgomery did not know anything because she was a black woman, with accompanying stereotypical gestures (*id.* ¶ 153).

After exhausting administrative remedies, Montgomery filed suit. ECF No. 1. Medstar moved for summary judgment, which the Court granted after considering Montgomery's response. ECF Nos. 32, 37–38. The Court reasoned that Montgomery had suffered a singular adverse employment action—termination—that was based on legitimate and non-discriminatory grounds arising from her documented performance issues. ECF No. 37 at 10–13 (discrimination); *id.* at 15–16 (retaliation).

One week after the Court granted summary judgment in Medstar's favor, Montgomery's counsel was disbarred. ECF No. 40-1. The Court does not know why counsel was disbarred, although Montgomery suggests that it was due to medical issues. ECF No. 45 at 2 n.1; *see also* ECF No. 31 at 1 (former counsel stating that a filing was delayed "due to health issues and subsequent case management concerns").

Twenty-eight days after the Court granted summary judgment in favor of Medstar on all claims, Montgomery moved for reconsideration, arguing that her former counsel mishandled her case. ECF No. 40. The Court granted Montgomery six weeks to retain new counsel and supplement the motion. ECF No. 41. Montgomery's new counsel has so supplemented (ECF No. 43), and the motion is ripe for resolution.

## II.     Standard of Review

A motion for reconsideration filed within 28 days of the underlying order is governed by Federal Rule of Civil Procedure 59(e). *See Katyle v. Penn. Nat. Gaming, Inc.*, 637 F.3d 462, 471

n.4 (4th Cir. 2011). Courts recognize three limited grounds for granting a motion for reconsideration pursuant to Rule 59(e): (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not previously available, or (3) to correct clear error of law or prevent manifest injustice. *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)), *cert. denied*, 538 U.S. 1012 (2003). A Rule 59(e) motion "may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al.*, Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995)). Where a party presents newly discovered evidence in support of its Rule 59(e) motion, the party "must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Pacific Ins. Co.*, 148 F.3d at 403 (quoting *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (internal marks omitted). Likewise, before considering the merits of "arguments that were not presented before judgment," the court must first be satisfied that the party was justified in not presenting such arguments previously. *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 410 n.9 (4th Cir. 2010). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pacific Ins. Co.*, 148 F.3d at 403 (quoting Wright, *et al.*, *supra*, § 2810.1, at 124).

**III. Analysis**

According to Montgomery, it would be manifestly unjust to grant summary judgment when her prior counsel effectively denied her the "opportunity to actively and meaningfully participate in the case." ECF No. 43 at 4. Courts are typically reluctant to grant reconsideration on account of an attorney's poor performance or neglect of the case. *See Loren Data Corp. v.*

*GXS, Inc.*, No. DKC 10-3474, 2011 WL 3946484, at *3 (D. Md. Aug. 30, 2011), *aff'd*, 501 F. App'x 275, 286 (4th Cir. 2012) (denying reconsideration under Rule 59(e) where conduct of "prior attorney may have fallen below professional standards"); *In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 658 (E.D. Va. 1999) (denying reconsideration under Rule 59(e) where attorney failed to respond to request for admissions and dispositive motions); *McCray v. Technicolor Video Cassette of Michigan, Inc.*, No. 2:12-CV-02088-JPM, 2013 WL 1338141, at *2–3 (W.D. Tenn. Mar. 29, 2013) (denying reconsideration under Rule 59(e) where attorney failed to participate in discovery due to medical concerns); *Jacobs v. Elec. Data Sys. Corp.*, 240 F.R.D. 595, 598 (M.D. Ala. 2007) (denying reconsideration under Rule 59(e) where attorney abandoned certain claims without client approval); *cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) (upholding dismissal under Rule 41 for counsel's failure to attend conference).

Because an attorney acts as the agent of his or her client, "each party is deemed bound by the acts of his lawyer." *Universal Film Exchs., Inc. v. Lust*, 479 F.2d 573, 574 (4th Cir. 1973) (affirming denial of reconsideration under Rule 60(b) where attorney did not enter an appearance or file an answer). Consequently, where a party chooses counsel to act on her behalf, "[s]he cannot later 'avoid the consequences of the acts or omissions of this freely selected agent.'" *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 409 (4th Cir. 2010)) (quoting *Link*, 370 U.S. at 633–34) (affirming denial of reconsideration under Rule 59(e) where attorney did not receive notice of summary judgment motion due to known computer difficulties and so did not respond).

To the legal profession's collective dismay, poor performance of counsel has arisen far more often than courts allow reconsideration on that basis. In fact, this Court could find only one prior instance in this district where poor attorney performance justified reconsideration.

5

*Knott v. Wedgwood*, No. DKC 13-2486, 2014 WL 4660811 (D. Md. Sept. 11, 2014). That case "involve[d] unusual circumstances especially because [counsel] allegedly was without email access or cell phone service" for approximately a month while admitted to a psychiatric hospital. *Id.* at *2. Counsel's inability to oppose the motion to dismiss was entirely beyond his control. *Compare id.*, *with Robinson*, 599 F.3d at 414 (Davis, J., concurring) (noting that counsel's actions were the result of an "unwise and misplaced *strategic* choice to litigate, ostrich-like, with his head in the sand"). By contrast, where counsel ostensibly could comply with professional standards, or could have arranged for additional or substitute counsel to assist in the case, courts do not grant reconsideration even where counsel had been suffering from a medical or mental condition. *See Fisherman's Wharf*, 83 F. Supp. 2d at 665 n.6. In those situations, the ultimate safety net for a client harmed by a lawyer's dereliction is filing a separate malpractice suit. *Link*, 370 U.S. at 634 n.10.

Although Montgomery's former counsel may have been disbarred, nothing before this Court explains the grounds for disbarment or how such grounds affected Montgomery's case. Further, while former counsel's response to Medstar's summary judgment motion appears in certain parts to be unfinished, the response fronted arguments notably consistent with those of current counsel. *Compare* ECF No. 35 at 1 (leaving "___" in place of certain facts), *with* ECF No. 43 at 9.[5] More to the point, former counsel's response was sufficiently adequate such that the Court could reach the dispositive issues. *Cf. Fisherman's Wharf*, 83 F. Supp. 2d at 655 (denying reconsideration motion where counsel failed to respond to entire arguments); Robinson, 599 F.3d at 406 (same).

Much of Montgomery's argument for reconsideration boils down to the supposed

---

[5] Both current and former counsel argued that Montgomery's rating as a "key contributor" and other statements in her performance reviews should preclude summary judgement. *Compare* ECF No. 43 at 9–10, 12, *with* ECF No. 35 at 8; ECF Nos. 35-2 at 2–38.

manifest injustice of Montgomery's inability "to highlight the absence of evidence substantiating [Medstar's] claims." ECF No. 43 at 11. The Court is not convinced that failure to allow a *perfect* forum for highlighting what the record does *not* show constitutes manifest injustice, particularly given that this Court carefully scrutinized the hundreds of pages of exhibits offered by counsel for both parties.[6]

The Court is sympathetic to the difficulties experienced by a client whose lawyer's shortcomings affect the quality of her case. At the same time, the Court is mindful that former counsel did not completely abandon his representation, *cf. Jacobs*, 240 F.R.D. at 601, and that over the life of this case, Montgomery never sought new counsel or raised any concern about counsel's performance. The Court further notes that although disbarment is the most extreme sanction imposed on practicing attorneys, the grounds for disbarment are many, and not necessarily related to counsel's inability to perform satisfactorily in this case. Accordingly, Montgomery has failed to convince the Court that reconsideration based on counsel's disbarment is warranted.

### IV. Conclusion

For the foregoing reasons, Montgomery's motion to reconsider, and its supplement, are denied. ECF Nos. 40, 43. A separate Order follows.

December 3, 2018 _____ \_\_\_/S/_____
Date  Paula Xinis
 United States District Judge

---

[6] For example, new counsel argues that reconsideration would allow Montgomery to demonstrate that Medstar's termination arising from Montgomery's refusal to help a patron find lost keys is pretextual because a contemporaneous lost-and-found log *does not* include keys. ECF No. 43-4; ECF No. 43 at 8. Critically, however, the mere *absence* of keys at the lost-and-found does not prove that Medstar's grounds for discipline were pretextual. Montgomery may very well have behaved in a cold manner to a patron looking for lost keys even though the keys never ended up in the lost-and-found, and thus were never identified on the lost-and-found log. The items on the log (or absence of items), even viewed most favorably to Montgomery, would not give rise to an inference of pretext.